UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAZAR BRIKHO, et al.,                         Case No. 19-10592

      Plaintiffs,                              Stephanie Dawkins Davis
v.                                            United States District Judge

CITY OF DETROIT, et al.,

      Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT [ECF NO. 21] AND DISMISSING
PLAINTIFFS' STATE LAW CLAIMS WITHOUT PREJUDICE**

**I. INTRODUCTION**

      This case arises from activity that occurred during the execution of a search

warrant. Police officers from the City of Detroit executed a search warrant on the

business premises of Plaintiffs Nazar and Nancy Brikho. The Brikhos assert that

defendant officers executed the search warrant for retaliatory and racially

discriminatory reasons and that they used excessive force during the execution of

the search warrant. They also contend that the City of Detroit maintains a

wrongful policy of confiscating personal items during search warrants and never

returning them, and executing violent raids that are disproportionate to the minor

crimes that the police suspect have been committed.  Plaintiffs additionally bring state law claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence.  For the reasons discussed below, the court will **GRANT IN PART AND DENY IN PART** Defendants' Motion.  Plaintiffs' Fourth Amendment excessive force claim survives.  Plaintiffs' remaining claims against Defendants do not survive.  Lastly, this court **DECLINES** to exercise supplemental jurisdiction over Plaintiffs' state law claims and **DISMISSES** the state law claims **WITHOUT PREJUDICE**.

## II. FACTUAL BACKGROUND

Nazar and Nancy Brikho are a husband and wife who reside in Commerce Township, Michigan.  (ECF No. 1, PageID.2).  They are Chaldean Americans who speak both Arabic and English.  *Id.*  Mr. And Mrs. Brikho own a used car lot in Detroit Michigan called Matthew's Stop and Look Auto Sales.  (*Id.* at PageID.3; ECF No. 21-5, PageID.195).  On or about January 8, 2019, the Brikhos were working at the car lot when Defendant Officer Jana Greeno and Lieutenant Rebecca McKay arrived on the premises.  (ECF No. 1, PageID.3).  They asked Nazar Brikho about a case involving illegal trash dumping.  *Id.*  Brikho had no knowledge of the activity about which the officers asked him.  *Id.*  Nazar Brikho allowed the officers to come inside the premises and he, Greeno, and McKay proceeded into an office.  (Brikho Video Surveillance Video).  Surveillance video

from the car lot shows Brikho and the officers talking in the office for about six minutes. *Id.* According to Brikho, the officers demanded that he produce the company's video surveillance in order to further their investigation, and he refused. (*Id.* at PageID.4). Brikho then told the officers to leave his property. Brikho stated that the officers were upset when he asked them to leave. (ECF No. 25-1, PageID.219). According to Brikho, Officer Greeno declared that she would be back, used an expletive, and said that it was "personal now." (ECF No. 1, PageID.4).

The next day, Officer Greeno, Lieutenant McKay, Sergeant Walter Merida, and other John Doe officers returned to Matthew's Stop and Look Auto Sales with a search warrant. *Id.* Brikho says that the officers pointed long guns at him and his employees and forced them to lay on the ground. (*Id.*; ECF No.21-5, PageID.207). Brikho alleges that Officer Greeno taunted him during the execution of the search warrant, saying, "I told you I would be back." (ECF No. 1, PageID.5). The officers proceeded to seize personal and business equipment belonging to both Plaintiffs. *Id.* According to Nazar Brikho, Officer Greeno grabbed Nancy Brikho, dragged her to the front of the premises, and slammed her against the television. (ECF No. 21-5, PageID.208). Nancy Brikho testified that the officers "attacked" her in order to get her cell phone. (ECF No. 21-6,

PageID.233).  However, Nancy also testified that she was never handcuffed and that she did not sustain any physical injuries from the officers.  (*Id.* at PageID.237).

Nazar Brikho further testified that he told the officers that he had guns on the premises, and when he went to retrieve the gun for the officers, an officer grabbed him by the throat, choked him, and slammed him against the wall.  (ECF No. 21-5, PageID.208).  After an officer tried to choke him, Brikho testified in his deposition that the officers put him in handcuffs.  (*Id.* at PageID.209).  He stated that they put the handcuffs on him really tightly and he asked the officers to loosen them, but the officers refused to loosen them.  *Id.*  Brikho stated that his son continually asked the officers to loosen his handcuffs.  (*Id.* at PageID.210).  Brikho also stated that when he was standing, every time an officer came by, the officer would grab Brikho and slam him against a wall.  *Id.*  Additionally, he stated that officers kicked him and pushed him back into a chair every time he tried to stand up.  (*Id.* at PageID.213).  Brikho says the officers handcuffed him for 20 minutes or more until he gave the officers the shop's DVR surveillance.  (*Id.* at PageID.210; 213).  He claims to have sustained bruises on his neck when the officers grabbed him by the neck and he sustained bruises on his arms where the officers handcuffed him and slammed him against the wall.  *Id.*  Lastly, Brikho stated that he sustained bruises on his legs from when the officers kicked him in order to force him to sit down.  *Id.*  As proof, Brikho has proffered photographs

showing bruising on his wrists and on what appears to be on the knee/thigh area of one of his legs.  (ECF No. 23-5, PageID.297–300).  According to Nancy Brikho, the execution of the search warrant lasted for two hours to three and a half hours. (ECF No. 21-6, PageID.237).  According to Nazar Brikho, the officers were in Plaintiffs' shop executing the search warrant for "at least an hour, hour and a half." (ECF No. 21-5, PageID.212).

Defendants deny using any excessive force on the Plaintiffs or any other individuals during the execution of the search warrant.  Defendants submitted two videos as evidence, which they say prove that no constitutional violations occurred. (*See* CCTV video, DPD body camera video).  One video shows the encounter that occurred between Nazar Brikho, Officer Greeno, and Lieutenant McKay on January 8, 2019.  (CCTV video).  The second video is a body camera video belonging to Officer Jackson from the January 9, 2019 execution of the search warrant at Plaintiffs' business premises.  (DPD body camera video).

Plaintiffs filed their complaint on February 27, 2019 against the City of Detroit, the Detroit Police Department, Officer Jana Greeno, Sergeant Walter Merida, and John Doe police officers (ECF No. 1).  The complaint includes the following counts: 1) Fourth Amendment violation of unreasonable search and seizure and Fourteenth Amendment violations of substantive due process and equal protection; 2) Eighth Amendment cruel and unusual punishment violation; 3)

*Monell* violation of constitutional rights by City of Detroit; 4) false imprisonment;

5) assault and battery; 6) intentional infliction of emotional distress; and 7)

negligence.  (*Id.* at PageID.5–15).  On April 24, 2020, Defendants, excluding the

John Doe Defendants, filed the present Motion for Summary Judgment.  (ECF No.

122).  Plaintiffs filed a response in opposition to the Motion on May 15, 2020.

(ECF No. 244).  Defendants filed a reply on May 28, 2020.  Hearing in this matter

occurred on December 2, 2020 at 11:00 a.m.

## III. LEGAL STANDARD

When a party files a motion for summary judgment, it must be granted "if

the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party

asserting that a fact cannot be or is genuinely disputed must support the assertion

by: (A) citing to particular parts of materials in the record...; or (B) showing that

the materials cited do not establish the absence or presence of a genuine dispute, or

that an adverse party cannot produce admissible evidence to support the fact." Fed.

R. Civ. P. 56(c)(1).  The standard for determining whether summary judgment is

appropriate is "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th

Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52

(1986)).  Furthermore, the evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co.*, *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Where the movant establishes the lack of a genuine issue of material fact, the burden of demonstrating the existence of such an issue then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  That is, the party opposing a motion for summary judgment must make an affirmative showing with proper evidence and to do so must "designate specific facts in affidavits, depositions, or other factual material showing 'evidence on which the jury could reasonably find for the plaintiff.'"  *Brown v. Scott*, 329 F. Supp. 2d 905, 910 (6th Cir. 2004).  In order to fulfill this burden, the non-moving party only needs to demonstrate the minimal standard that a jury could ostensibly find in his favor.  *Anderson*, 477 U.S. at 248; *McLean v. 988011 Ontario*, *Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, mere allegations or denials in the non-movant's pleadings will not satisfy this burden, nor will a mere scintilla of evidence supporting the non-moving party.  *Anderson*, 477 U.S. at 248, 251.

The court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

Such a determination requires that the court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id*. at 254. Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the court must determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53. Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case for which it carries the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at 327.

## IV. DISCUSSION

### A. Claims Against the Detroit Police Department

Plaintiffs named the Detroit Police Department as a defendant in this matter. However, police departments are entities of the city where they are located; therefore, the city is the real party in interest when an individual wants to pursue legal action against a police department. *See* Mich. Comp. Laws. Ann. § 92.1; *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 803 F. Supp. 1251, 1256 (E.D.

Mich. 1992), *aff'd,* 32 F.3d 989 (6th Cir. 1994) (dismissing an action against the

City of Romulus Police Department "because the police department is not a legal

entity against whom a suit can be directed."). For this reason, the court will grant

summary judgment for the Detroit Police Department.

### B. Claims Against Officer Greeno, Sergeant Merida, and the John Doe Officers

Plaintiffs' complaint alleges that Officer Greeno, Sergeant Merida, and the John

Doe officers subjected Plaintiffs to an unreasonable search and seizure and violated

their liberty rights in violation of the Fourth and Fourteenth Amendments. (ECF

No.1, PageID.5–6). Plaintiffs additionally claim that the officers executed the

search warrant for racially motivated reasons and in retaliation for Brikho telling

Officer Greeno to leave his business premises the day prior in violation of the

Equal Protection Clause of the Fourteenth Amendment. (*Id.* at PageID.5, 7). The

complaint also alleges that Defendants subjected Plaintiffs to cruel and unusual

punishment in violation of the Eighth Amendment. (*Id.* at PageID.8).

### 1. Legal Standards

Defendants Greeno and Merida argue that they are entitled to qualified

immunity for the claims the Brikhos make against them. Thus, Plaintiffs' claims

against the individual officers should be analyzed under the qualified immunity

framework. *See Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). The

doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Defendants bear the burden of pleading qualified immunity, but plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his or her position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct.  *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002) (citation omitted) (explaining that "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity").

The Supreme Court has established a two-part test in order to determine whether qualified immunity is applicable to a particular situation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  The first part of the test involves a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right."  *Id*.  If the first question was resolved in the affirmative, then the court would decide "whether the right was clearly established."  *Id*.  If both questions were resolved in the affirmative, then the doctrine of qualified immunity would not apply, and the case

could proceed.  Later, the Supreme Court discarded the mandatory sequencing of the two-part qualified immunity test, finding that it was no longer sound based on several factors, including judicial economy.  *Pearson v. Callahan*, 555 U.S. 223, 227 (2009).  "This generally means that 'we are free to consider those questions in whatever order is appropriate in light of the issues before us.'"  *Jones v. Byrnes*, 585 F.3d 971, 975 (6th Cir. 2009) (quoting *Moldowan v. City of Warren*, 570 F.3d 698, 720 (6th Cir. 2009)).

Under the "clearly established" prong of the qualified immunity test, the contours of the right must be sufficiently clear such that a reasonable official would understand that what he is doing violates that right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "A clearly established constitutional violation requires on-point, controlling authority or a robust consensus of cases of persuasive authority."  *Ortega v. U.S. Immigration and Customs Enforcement*, 737 F.3d 435, 439 (6th Cir. 2013).  "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard."  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective

of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*,
489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395–96). "The
calculus of reasonableness must embody allowance for the fact that police officers
are often forced to make split-second judgments-in circumstances that are tense,
uncertain, and rapidly evolving-about the amount of force that is necessary in a
particular situation." *Graham*, 490 U.S. at 396–97. "Relevant considerations
include 'the severity of the crime at issue, whether the suspect poses an immediate
threat to the safety of the officers or others, and whether he is actively resisting
arrest or attempting to evade arrest by flight.'" *Fox*, 489 F.3d at 236 (quoting
*Graham*, 490 U.S. at 396).

Defendants submitted video footage of the two encounters that they had with
the Brikhos on January 8th and 9th of 2019. (*See* CCTV video, DPD body camera
video). The Supreme Court has held that courts should view the facts of a case in
the light depicted by a videotape, if one exists, when ruling on a motion for
summary judgment. *Scott v. Harris*, 550 U.S. 372, 380–81). If a party's story "is
blatantly contradicted by the record, so that no reasonable jury could believe it,"
then the court should not adopt the contradicted version of the facts. *Id.* at 380.
The court will therefore review and assess the submitted video footage, along with
other evidence in the record, when analyzing Plaintiffs' claims. However, the
execution of the search warrant in this case took approximately ninety minutes

according to Mr. Brikho, (ECF No. 21-5, PageID.212), and approximately two to three and a half hours according to Mrs. Brikho (ECF No. 21-6, PageID.237), and Officer Jackson's body camera video capturing the search is one hour and twelve minutes long.  (DPD body cam video).  Further, the body cam video of the search warrant does not show the Brikhos throughout the entire video.  Therefore, the court does not have a video of the entirety of the parties' encounter and can only draw conclusions from the video based on the footage that the video captures.

1. Fourth Amendment – Unreasonable Search and Seizure, Excessive Force
    a. Unreasonable Search and Seizure

The Brikhos assert that the police officers conducted an unreasonable search and seizure in violation of the Fourth Amendment.  (ECF No. 1, PageID.6). Specifically, the complaint alleges that Defendants searched Nazar Brikho's person without his consent and wrongfully detained them, depriving them of their freedom and freedom of movement.  *Id.*  They also argue that the officers restrained Mr. Brikho in handcuffs for an unreasonable amount of time that was excessive for the investigative reasons claimed.  *Id.*  Defendants contend that they were acting pursuant to a valid search warrant and therefore did not violate Plaintiffs' rights. (ECF No.21, PageID.148).  Defendants also assert that they detained Brikho after he became belligerent towards the officers, pulled out a handgun, and waved it

around.  *Id.*  Therefore, Defendants contend that the amount of force they used to restrain Brikho was appropriate in the situation.  *Id.*

The Fourth Amendment is applicable where an individual's freedom to leave has been restricted.  *Thacker v. City of Columbus*, 328 F.3d 244, 257 (6th Cir. 2003).  Plaintiffs must show that there was a seizure and that it was unreasonable under the Fourth Amendment in order to prevail on their Fourth Amendment unreasonable seizure claim.  *Id.*

In general, police officers can rely on a "judicially secured warrant for immunity from a §1983 action for illegal search and seizure unless the warrant is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable."  *Tlapanco v. Elges*, 969 F.3d 638, 649 (6th Cir. 2020) (quoting *Yancey v. Carroll Cnty*, 876 F.2d 1238, 1243 (6th Cir. 1989)).  Further, law enforcement officers "have a limited authority to detain occupants of a premises while a proper search is being conducted."  *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000).  The authority to detain extends to individuals leaving and entering a premises during a search.  *Thorton v. Fray*, 429 F. App'x 504, 510 (6th Cir. 2011).  An officer may also conduct a pat-down search to find weapons on an individual if the officer believes the individual is armed and dangerous.  *Bohannon*, 225 F.3d at 617.  However, a pat-down is only acceptable if

a "reasonably prudent man in the circumstances" would have been justified in the belief that his safety or the safety of others was in danger.  *Id.*

In this case, the video submitted by Defendants shows that officers detained Brikho for approximately 6 minutes during the execution of the search warrant after he became angry and started to yell and bang his fists against a desk.  (DPD body cam video, 5:20–5:50).  Once Brikho calmed down, the officers removed his handcuffs.  (*Id.* at 12:00).  The video does not show, and Mrs. Brikho does not allege, that Defendants handcuffed her.  (*See id.* and ECF No. 23, PageID.252).  However, Defendants instructed Mrs. Brikho to go and wait in a room of the business premises during the execution of the search.  (*Id.* at 4:00).  Brikho argues that the search warrant was invalid because the officers executed the search warrant in retaliation for Brikho telling Officer Greeno to leave his property the day before, and for racially discriminatory reasons.  (ECF No. 23, PageID.258).

During the hearing in this matter, the court asked counsel for Plaintiffs if he ever challenged the validity of the search warrant.  Plaintiffs' counsel stated that he did not challenge the validity of the search warrant, and rested on the arguments that he asserted in the pleadings about the warrant being invalid.  However, Plaintiffs do not point to anything about the substance of the warrant that would render it invalid or lacking in probable cause.  Plaintiffs assert that the officers obtained the warrant for retaliatory and racially-motivated reasons.  But, as

-15-

discussed more fully, *infra*, the evidence in the record does not establish that the officers obtained the search warrant for retaliatory and racially motivated reasons. For instance, the language in search warrant itself does not show racially motivated reasons for obtaining the warrant.  Further, there is no evidence in the record that any of the police officers who were involved in securing the warrant hold racial animus towards Chaldeans.  *See* Section 2, Equal Protection and Retaliation, *infra*. The search warrant states that the officers observed a truck belonging to Plaintiffs' business engaging in illegal dumping; therefore they wanted to investigate the property.  (ECF No. 21-2, PageID.154).  Thus, a plain reading of the search warrant suggests no reason to conclude that probable cause to search Plaintiffs' business premises was unreasonable or lacking.  Consequently, the court concludes that the search warrant was valid and that the detention of the Brikhos during the execution of the search warrant was reasonable pursuant to *Bohannon* and *Thorton*.

Next, the court must determine if the search of Nazar Brikho during the execution of the search warrant was a constitutional violation.  Plaintiffs assert that the officers subjected Mr. Brikho to an unreasonable search.  (ECF No. 1, PageID.6).

The search warrant in this case states that Nazar Brikho is to be searched. (ECF No. 21-2, PageID.154).  In the second paragraph of the search warrant it states, "Also to be searched: Red F-150 . . . and any containers within such vehicle

-16-

. . . and Owner Nazar Brikho[.]" *Id.* Therefore, the search of Nazar Brikho was valid because he was searched pursuant to a valid search warrant.

In conclusion, there is no genuine dispute of material fact as to whether Defendants had probable cause to execute the search warrant. Thus, the search warrant was valid and it was also legally valid for Defendants to detain Plaintiffs during the execution of the search warrant pursuant to *Bohannon* and *Thorton*. Further, Defendants were legally allowed to search Nazar Brikho pursuant to the language of the search warrant that allowed for the search of his person. (ECF No. 21-2, PageID.154). For these reasons, the court concludes that there is insufficient evidence on which a jury could reasonably conclude that Defendants violated Plaintiff Nazar Brikho's Fourth Amendment right to be free from unreasonable search and seizure.

### b.  Handcuffing and Excessive Force

Plaintiffs next assert that Defendants violated their Fourth Amendment rights through their actions during the execution of the search warrant. (ECF No. 1, PageID.8). In particular, the Brikhos claim that Defendants pointed guns at Nazar Brikho and the employees of the car lot, handcuffed Mr. Brikho, and physically assaulted him. (*Id.* at PageID.4). Defendants contend that the officers did not violate the Fourth Amendment. (ECF No. 21, PageID.148). They state

that the only use of force that occurred during the search, and that is shown in the video evidence they submitted, was the handcuffing of Nazar Brikho. *Id.* They contend that the video shows that handcuffing Brikho was appropriate given the situation and that Plaintiffs have not alleged facts required to sustain a handcuffing excessive force claim. (*Id.* at PageID.149).

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." *Schreiber*, 596 F.3d at 331–32 (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). To determine if an officer's use of force was reasonable, this court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* (quoting *Graham*, 490 U.S. at 396). To sustain a handcuffing excessive force claim on summary judgment, a plaintiff must show that "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced some physical injury resulting from the handcuffing." *Morrison v. Bd. of Trustees of Green Twp.*, 583 F.3d 394, 401 (6th Cir. 2009) (internal quotations omitted). Bruising can support a handcuffing excessive force claim. *Id.* at 403.

-18-

Here, Nazar Brikho testified at his deposition that officers came into his shop with their guns pointed at everyone and forced everyone to the ground.  He also stated that officers choked him when he went to obtain his guns and slammed him against the wall.  He states that officers put tight handcuffs on him for approximately 20 to 25 minutes, and kicked him if he tried to stand up.  Plaintiffs submitted photos of bruising around Brikho's wrists and bruising on his thigh to substantiate their claims.  (ECF No. 1-3).  These photos support Plaintiffs' contention that the handcuffs placed on Mr. Brikho were too tight and that the officers physically assaulted him during the execution of the search warrant.

However, the video evidence of Officer Jackson's body camera submitted by the Defendants contradicts, at least in part, Brikho's testimony in that it does not show the officers physically assaulting Brikho.  Yet, the video, which also contains audio, does not depict the entire execution of the search warrant.  It is notable nevertheless that the video shows the officers entering Plaintiffs' shop without any weapons out.  The officers also did not force anyone onto the ground; rather, they handcuffed several individuals who were inside of the shop when they first entered.  About 6 minutes into the officers' arrival, Nazar Brikho became angry and started yelling at the officers to tell him why they were there.  He slammed his fists onto a desk in one of the offices.  At this point, the officers handcuffed Brikho.  Brikho then calmed down and is seen talking to the officers in a friendly

manner, talking about the shop's DVR surveillance footage.  The officers then took the handcuffs off of Brikho approximately 6 minutes after they had put them on. At no point did Brikho say that the handcuffs were too tight or ask the officers to loosen the handcuffs.

Further, the video shows that the officers conducting the search entered the building without drawing any weapons and without forcing anyone to the ground. Thus, the video clearly contradicts some of the facts upon which Plaintiffs rely and consequently weaken Plaintiffs claims of excessive force.  The officers handcuffed Plaintiffs' employees when they entered the shop; however, they removed the employees' handcuffs at different times during the course of the search.  Therefore, it appears that no one was handcuffed for the entire length of the search. Moreover, as this court noted above, officers can generally handcuff individuals who are on a premises while they execute a valid search warrant on the premises, for the length of time that it takes to conduct the search.  *See United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000); *Thorton v. Fray*, 429 F. App'x 504, 510 (6th Cir. 2011).

The video also does not show officers choking Nazar or slamming him against a wall when he went to retrieve his guns for them.  Nor does the video show officers kicking Nazar when he stands up.  The video additionally does not show officers dragging Nancy Brikho and slamming her against any walls.  The

-20-

video does depict officers touching Nancy and directing her to move to certain spots. Nancy is later spotted in the video quietly sitting in a chair, without handcuffs on. Though Plaintiffs testified that the officers engaged in the assaultive behavior described above, under *Scott v. Harris*, the court is not required to accept Plaintiffs' version of the facts if those facts are directly contradicted by video evidence. At first blush, that would appear to be the case here. But, as noted, Plaintiffs point out that the entire search is not captured on video and suggest that the behavior about which they complain could have occurred during periods not recorded or a part of the video.

First, the court will consider Mr. Brikho's excessive handcuffing claim. Plaintiffs allege that Defendants used excessive force when handcuffing Mr. Brikho. Brikho stated in his deposition that Defendants took his handcuffs off after he gave them the DVR equipment, and Brikho does not allege that Defendants handcuffed him again at any other point during the execution of the search warrant. (ECF No. 21-5, PageID.221). Officer Jackson's body camera video thus shows the entirety of the time period that Brikho was handcuffed. (DPD body cam, 5:40–12:30) Importantly, while Brikho was handcuffed, he did not complain about the handcuffs being too tight. (*See* DPD body cam, 5:40–12:30). Pursuant to *Morrison*, a plaintiff must show that he complained that the handcuffs were too tight to sustain an excessive force handcuffing claim on

-21-

summary judgment. 283 F.3d at 401. Jackson's bodycam video shows the entire time period that Defendants kept Mr. Brikho handcuffed and Brikho never complained about the handcuffs being too tight. Therefore, Plaintiffs' excessive force handcuffing claim necessarily fails.

Next, the court will consider Plaintiffs' excessive force claims relating to Defendants execution of the search warrant. Officer Jackson's body camera video does not depict the physical force that Plaintiffs described. Plaintiffs' counsel pointed out at the hearing in this matter that the video is not on the Brikhos the entire time; therefore, unconstitutional activity could have occurred when the camera was not on them. Plaintiffs are correct that the body camera does not show either Nazar Brikho or Nancy Brikho for the entire length of the video. In particular, there is a 15-minute portion of the video, at around approximately minutes 21 to 36, where Mr. Brikho is not in the video. There are various other shorter lengths of time when Mr. Brikho is not in the video, but then appears again, either sitting down or walking around. Further, the body camera video does not capture what occurred towards the end of the search. The video stops after one hour and twelve minutes, while Defendants are still inside of Plaintiffs' business premises executing the search warrant. The court cannot be certain what occurred during the time periods that Plaintiffs were off-camera or after the body camera stopped recording. Plaintiffs' submission of photographs of bruising on Mr.

Brikho's body, together with Plaintiffs' deposition testimony about Defendants

shoving, kicking, and dragging them lend support to their claims that Defendants

used excessive force to carry-out a routine search warrant for a non-violent and

non-dangerous offense.  (*See* ECF No. 23-5).  Defendants deny using such force,

but in view of the incompleteness of the video, their denials merely present the

court with a credibility contest between the Brikhos and the defendants—the

resolution of which lies not with the court, but with the trier of fact.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are

jury functions . . . not those of a judge"); *Bard v. Brown Cnty., Ohio*, 970 F.3d 738,

759 (6th Cir. 2020) (same); *Nelms v. Wellington Way Apartments, LLC*, 513 F.

App'x 541, 548 (6th Cir. 2013) ("It is fundamental that a judge may not make

credibility determinations . . . when ruling on a summary-judgment motion; such

functions are for the finder of fact").  Therefore, there remains a dispute of fact

regarding the nature and extent of the force Defendants used while executing the

search warrant.

Even if Defendants are found to have used excessive force while executing

the search warrant, they are still entitled to qualified immunity unless such conduct

violated a clearly established right.  In general, the Sixth Circuit "has held that the

right to be free from excessive force is a clearly established Fourth Amendment

right." *Neague v. Cynkar*, 258 F.3d 504, 507 (6th Cir. 2001).   The Sixth Circuit

has also concluded that "the right of people who pose no safety risk to the police to be free from gratuitous violence during arrest" is clearly established.  *Cline v. Myers*, 495 F. App'x 578, 582 (6th Cir. 2012).  In *Cline*, police officers obtained a search warrant to apprehend an individual who was suspected of entering a house, brandishing a gun, and stealing property from the house's residents.  *Id.* at 579. The plaintiff accused a police officer of excessive force during the execution of the search warrant when the officer kicked him after the search concluded, even though he was handcuffed and he was not the suspect the police were looking for. *Id.* at 582.  The court reasoned that the plaintiff was not the suspect, he was restrained in handcuffs, and he was lying on the floor at the time that the officer allegedly kicked him.  *Id.*  The court concluded that there was a question of fact about whether the officer used excessive force.  *Id.  See also Graham v. Connor*, 490 U.S. 386, 396 (reasoning that the use of less force is generally reasonable where individuals do not pose an immediate threat, are not actively resisting arrest, and are not suspected of a severe crime).

In addition, the Sixth Circuit has recognized that officers can detain the occupants of a premises during a search for contraband and that officers are only entitled to use "reasonable force" to effectuate such a detention.  *Binay v. Bettendorf*, 601 F.3d 640, 652 (6th Cir. 2010).  In *Binay*, the police suspected that narcotics trafficking was occurring at the plaintiffs' apartment.  *Id.* at 643.  The

plaintiffs accused the officers of brandishing weapons when they entered the plaintiff's apartment, forcing them to the floor, handcuffing them, and holding them at gunpoint for the 60-minute duration of the search. *Id.* The *Binay* court found that the officers used excessive force, and held that it was clearly established that using more force than necessary to detain the plaintiffs during a search warrant for suspected narcotics trafficking violates the Fourth Amendment. *Id.*

As the *Cline* court reasoned, it is clearly established that there is a right to be free from violence during arrest if an individual does not pose a safety risk. *Cline*, 495 F. App'x at 582. Further, under *Binay*, it is clearly established that an officer cannot use more force than is necessary to detain individuals while executing a search warrant. *Binay*, 601 F.3d at 652. "[C]laims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). In determining whether a constitutional violation based on excessive force has occurred, the Sixth Circuit applies "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007) (citing *Graham*, 490 U.S. at 395-96). "The calculus of reasonableness must embody allowance for the fact that

police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.  "Relevant considerations include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"  *Fox*, 489 F.3d at 236 (quoting *Graham*, 490 U.S. at 396).  Here,  Brikho alleges that the officers grabbed him by the neck, slammed him against the wall, and kicked him when he tried to stand up.  The officers in this case were executing a search warrant for suspected illegal trash dumping, which is a non-dangerous and non-violent crime.  Mr. Brikho was not under arrest at the time that the police executed the search warrant, and he had willingly turned over his guns to the police earlier during the execution of the search warrant.   Fortunately, the contours of the Fourth Amendment's prohibition on excessive force are well-defined.  Under long-standing case law in this circuit, "there undoubtedly is a clearly established legal norm precluding the use of violent physical force against a criminal suspect who already has been subdued and does not present a danger to himself or others." *Harris v. City of Circleville*, 583 F.3d 356 (6th Cir. 2009) (citing *Grawey v. Drury*, 567 F.3d 302 (6th Cir. 2009) ("The general consensus among our cases is that officers cannot use force . . . on a detainee who has been subdued" and "is not

resisting arrest.").  If a jury accepts Mr. Brikho's version of events, it could

reasonably conclude that he was assaulted with no evidence of active resistance or

failure to follow commands.  On the other hand, the jury could reasonably

conclude that the officers did not engage in the type of assaultive conduct that

Brikho has alleged.  Given that material facts are in dispute, the court cannot

decide qualified immunity as a question of law.  *Harris v. City of Circleville*, 583

F.3d 356, 364 (6th Cir. 2009) ("When no facts are in dispute, whether an official

receives qualified immunity is a question of law.").

Therefore, for the reasons outlined above, qualified immunity does not

relieve Defendants of liability from Plaintiffs' Fourth Amendment excessive force

claim.

### 2.  Equal Protection and Retaliation

The Brikhos allege that Defendants' conduct was motivated because of

Plaintiffs' Chaldean ethnic background.  (ECF No. 1, PageID.7).  The complaint

also alleges that the search of Matthew's Stop and Look Auto Sales was in

retaliation for Brikho telling Officer Greeno to leave his property the preceding

day.  (*Id.* at PageID.5 (describing the search of the business as "excessive" and

"retaliatory").  Plaintiffs state that the search warrant, authored by the Defendant

officers, shows racial animus because it states that part of the factual basis for

probable cause of criminal activity is that Plaintiffs spoke "in their native tongue," like this was an indication that they were engaged in criminal activity.  (ECF No. 23, PageID.258).  Plaintiffs also state the body camera video and audio revealed an officer talking about how Chaldeans "run their mouths" and that if they run their mouths in America "they are gonna get their ass whooped."  (*Id.* at PageID.258).

Defendants state that the search warrant does not show racial animus, but rather that the police officers believed that the Plaintiffs were attempting to conceal information when they spoke to each other in Arabic the day when the officers were at Plaintiffs' business the day before they executed the search warrant.  (ECF No.21, PageID.146).  Defendants also point out that the officer who made disparaging remarks about Chaldeans is not a party to this action, did not contribute to the search warrant affidavit, and did not have any influence over the decision to conduct the search warrant.  The officer merely participated in executing the search warrant.  (*Id.* at PageID.146–47).

There must be a showing of racially discriminatory intent or purpose to sustain a claim for a violation of the Equal Protection Clause.  *Spurlock v. Fox*, 716 F.3d 383, 397 (6th Cir. 2013).  The following factors are important to consider in the intent inquiry:

> [t]he historical background of the decision[,] [especially] if it reveals a series of official actions taken for invidious purposes; the specific sequence of

events leading up to the challenged decision; departures from the normal procedural sequence; substantive departures[,] particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached; and the legislative or administrative history[,] . . . especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports.

*Id.* Here, the record does not support a finding of racial discriminatory intent. The Plaintiffs point out that an officer in their department, Officer Jackson, who was neither the affiant on the search warrant nor part of the visit from the day before, made negative comments about Chaldeans. An officer can indeed be heard making disparaging remarks about Chaldeans on the video footage submitted to the court; however, Defendants point out that this officer was not an individual with decision making authority and was just helping to execute the search warrant. The record also does not suggest that the officer who made the negative remarks had any decision making authority about obtaining the search warrant—Officer Greeno, and not the officer who made the negative remarks, was the affiant who secured the search warrant. (ECF No. 21-2, PageID.153). Thus, troubling as Officer Jackson's comments may be, there is no reason to believe that those comments—which notably were made *after* the warrant was obtained and being executed—provided motivation for obtaining the warrant.

The Plaintiffs next state that the search warrant itself shows that the officers wrongfully based their probable cause on the Plaintiffs speaking a language other than English. The affidavit supporting the search warrant states, "[Nazar Brikho]

spoke in a language unknown to us. . . . [Nancy Brikho] responded in the same language." (*Id.* at PageID.155). The warrant also states, "[Nancy] said something in another language to Nazar as Lt. McKay was asking Sgt. Merida to make the location." (*Id.* at PageID.156). It next states, "[i]t was obvious that [the Brikhos] . . . would speak in their native tongue  . . . [to] "[get] their story straight" or [cover] something up." *Id.* These statements in the search warrant affidavit also fail to show racial discriminatory intent. First, the statements in the search warrant talk about language, and not directly about race or national origin. Second, the search warrant makes clear that the officer was making note of the Plaintiffs not speaking English because it seemed to the affiant that Plaintiffs, who otherwise were speaking English, reverted to another language at various points in an effort to cover up something from the officers. The warrant did not make any disparaging or negative comments about the Plaintiffs not speaking English, but simply noted points at which Plaintiffs started speaking to one another in a language other than English.

Plaintiffs also allege that retaliation for asking the officers to leave their property the day before was a factor behind the officers obtaining the search warrant. Plaintiffs point out that the day before the search warrant was executed and after Nazar Brikho told her and Lieutenant McKay to leave his business premises, Officer Greeno stated that she would be back to the Plaintiffs' business premises. Plaintiffs contend that Greeno was angry after Nazar Brikho told the officers to leave the

property.  Officer Greeno also was the affiant to the search warrant.  However, Plaintiffs do not argue a separate claim of retaliation in their complaint or their response brief.  (*See* ECF No. 1; ECF No. 23).  Further, to this court's knowledge no such claim has been recognized under the Fourteenth Amendment.  *See Bernheim v. Litt*, 79 F.3d 318, 323 (2d Cir. 1996) ("we know of no court that has recognized a claim under the equal protection clause for retaliation following complaints of racial discrimination.").  Individuals can only bring retaliation claims under the First Amendment or Title VII.  *Ratliff v. DeKalb Cty., Ga.*, 62 F.3d 338, 340 (11th Cir. 1995) ("retaliation is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation.").

Based on the foregoing, Plaintiffs have not demonstrated that a material dispute of fact exists about Defendants' alleged racially discriminatory intent, and Plaintiffs cannot bring a retaliation claim under the Fourteenth Amendment.  The record contains no evidence that the officer who displayed verbal racial animus towards Chaldeans participated in securing the search warrant or suggested getting the search warrant.  Officer Greeno, and not the officer making the disparaging remarks, was the affiant of the search warrant.  The language of the search warrant also does not support the conclusion that the search was motivated by discriminatory intent; the warrant suggests that the Plaintiffs might have been covering something

up by not speaking English.  Evidence also does not support Plaintiffs' retaliation

argument.  Plaintiffs have only stated that Greeno was angry after Nazar Brikho told

her to leave his premises and that she informed Brikho that she would be back to the

premises with a warrant.  However, an officer obtaining a valid search warrant after

an individual refuses to consent to an investigative search is the appropriate next step

for an officer to take in order to continue an investigation.  Review of the video

showing the search does not show anything occurring that could lend support to

Plaintiffs' argument that Defendants had racial discriminatory intent.  For these

reasons, the court concludes that Defendants did not discriminate against Plaintiffs

based on race.

### 3. Eighth Amendment

Count II of Plaintiffs' complaint alleges Eighth Amendment violations.

(ECF No. 1, PageID.8).  Plaintiffs allege that Defendants' alleged actions during

the execution of the search warrant subjected them to cruel and unusual

punishment.  *Id.*  Defendants contend that Plaintiffs' Eighth Amendment claim is

improper because a claim for cruel and unusual punishment only arises after a

conviction.  (ECF No. 21, PageID.150).  Plaintiffs respond that they have asserted

a valid Eighth Amendment claim.  (ECF No. 23, PageID.267).  They contend that

Defendants' argument that Plaintiffs were never charged or convicted of a crime is

"meritless" on the issue of whether the Defendants' actions are the type that are protected by the Eighth Amendment.  *Id.*

The Eighth Amendment is not implicated prior to a conviction.  *Bass v. Robinson*, 167 F.3d 1041, 1049 (6th Cir. 1999).  A "[s]tate does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977).  Here, the State did not convict Plaintiffs.  Therefore, Plaintiffs Eighth Amendment claim fails.

C. *Monell* Liability

To prevail in a § 1983 claim against a municipality, a plaintiff must demonstrate: "(1) the deprivation of a constitutional right[;] and (2) [that] the [municipality] is responsible for [the] violation." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).  The second part of a § 1983 claim requires Plaintiffs to show that Defendants are liable for the constitutional violation.  To do this, Plaintiffs "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom."  *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)).  "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'"  *Id.*  (quoting *Monell*, 436 U.S. at 694).  Plaintiffs must show one of the following to prove this claim:

(1) the existence of an illegal official policy or legislative enactment;
(2) that an official with final decision making authority ratified illegal actions;
(3) the existence of a policy of inadequate training or supervision; or
(4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (emphasis added)).

Defendants' argue that Plaintiffs have failed to identify any unconstitutional custom, policy, or practice that led to a deprivation of Plaintiffs' constitutional rights. (ECF No.21, PageID.139). Defendants assert that paragraphs 37 and 38 of the complaint allege a general practice of unjustified arrests and failures to timely prepare investigative reports. (*Id.* at PageID.139). However, Defendants maintain that no unconstitutional policy or practice exists or has been established. (*Id.* at PageID.139). Plaintiffs argue that Sergeant Merida substantiated the policy and procedures regarding the manner in which the use of force was applied to Brikho. (ECF No. 23, PageID.259). Plaintiffs also assert that the officers seized belongings during the execution of the search warrant that had no material investigative value and they have not returned the items over a year later. (*Id.* at PageID.259–60). Plaintiffs assert that the policy to indefinitely retain personal property with no rationale as to the duration or expectation of return of the items, is a policy and procedure that violates an individual's right to be free from an

unreasonable search and seizure.  (*Id.* at PageID.260).  Further, at the hearing in this matter, Plaintiffs' counsel asserted that the City of Detroit has an unconstitutional policy of executing search warrants with armed SWAT teams for only minor offenses.

In order to allege a §1983 claim against a municipality, there must first be a constitutional violation.  This court has held that disputes of fact remain about Plaintiffs' rights to be free from excessive force during the execution of a search warrant.  Plaintiffs therefore establish a factual dispute about the existence of these constitutional deprivations.  However, neither Plaintiffs' pleadings nor the record bring forth a factual dispute about whether the City of Detroit is liable for the violations.  Plaintiffs assert that Officer Merida "substantiated" unconstitutional policy and procedure within the Detroit police department.  (ECF No. 23, PageID.259).  But Plaintiffs bring no evidence beyond their conclusory statements in order to support their contention that Merida did in fact substantiate unlawful policies and procedure.  Nor do Plaintiffs bring evidence to support their proposition that the City of Detroit maintains unconstitutional policies or procedures.  (*See* ECF No. 23, PageID.258–60).  Plaintiffs' mere allegations do not suffice to defeat summary judgment.  *Anderson*, 477 U.S. at 248, 251.

Plaintiffs assert that the City of Detroit has a policy of confiscating personal property and not returning it.  Defendants have acknowledged that Plaintiffs'

personal property has still not been returned to them, including cell phones and

DVR footage.  During her deposition, Officer Greeno explained that Plaintiffs will

not get their property back until the illegal dumping case is adjudicated.  (ECF No.

21-3, PageID.172).  Greeno stated that the investigation in the illegal dumping case

is ongoing because the police department is unable to access the phones to see if

there is information about knowledge of the dumping or the individuals that

participated in the illegal dumping.  *Id.*   So, according to Defendants, they have

retained Plaintiffs' personal property as part of an ongoing investigation and not

due to a policy of not returning seized items.  Plaintiffs point to no evidence that

Defendants have a policy of not returning personal items that are taken during

search warrants.  Nor have they proffered factual evidence showing that this is an

ongoing practice of the City.

    In summary, Plaintiffs allege that the City of Detroit is liable for the individual

officers' actions in obtaining and executing the search warrant on their premises.

They also maintain that the City has unconstitutional policies that allow officers to

conduct excessive raids that are disproportionate to the suspected crime committed,

and that allow officers to confiscate personal property and never return it.

However, Plaintiffs' have not identified a specific policy and they have not

proffered evidence that demonstrates a pattern of misconduct by Detroit police

officers that they allege. For these reasons, the court finds that Plaintiffs do not establish *Monell* liability against the City of Detroit.

D. State Law Claims

Counts IV–VII of Plaintiffs' complaint alleges state law claims of false imprisonment, assault and battery, intentional infliction of emotional distress, and negligence. (ECF No. 1, PageID.12–15). Pursuant to 28 U.S.C. § 1367, district courts may exercise supplemental jurisdiction over state law claims. However, "supplemental jurisdiction is discretionary, not mandatory." *Charvat v. NMP, LLC*, 656 F.3d 440, 446 (6th Cir. 2011). A district court may decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of [s]tate law,
> (2) *the claim substantially predominates over the claim or claims over which the district court has original jurisdiction*,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014) (emphasis added). Here, the court has dismissed all of Plaintiffs' federal claims except for the Fourth Amendment excessive force claim as to Mr. Brikho. The remaining four claims in this case are state law claims: false imprisonment, assault and battery, intentional infliction of emotion distress, and negligence. (ECF No. 1, PageID.12–15). Where state law claims predominate

over federal claims in a lawsuit, district courts may decline supplemental jurisdiction over the state law claims, dismiss the state law claims without prejudice, and leave the resolution of the claims to the state courts. *Kubala v. Smith*, 984 F.3d 1132, 1137 (6th Cir. 2021). Here, Plaintiffs' state law claims predominate over the federal claims both as to number and as to the "scope of the issues raised." *Id.* Therefore, this court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.

## V. CONCLUSION

The only claim for which disputes of material fact remain concern whether Defendants violated Nazar Brikho's right to be free from the use of excessive force while the police executed the search warrant. For these reasons and the reasons discussed herein, the court will **GRANT IN PART AND DENY IN PART** Defendants' Motion for Summary Judgment. The court declines supplemental jurisdiction over Plaintiffs' state law claims. The court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims.


SO ORDERED.

Dated:          March 31, 2021

s/Stephanie Dawkins Davis
HON. STEPHANIE DAWKINS DAVIS
United States District Court Judge
